The opinion of the court, (Tirghman, C. J., not giving any opinion, in consequence of sickness and absence,) was delivered by
Rogers, J.
The Pennsylvania Agricultural and Manufacturing Bank, were the equitable owners of a house and lot in the borough of Carlisle, which had been occupied by them, in the necessary transaction of their business as a banking house. The stockholders having agreed, that the business of the bank should be wound up, and' having no further use for the house and lot, it was sold by *32 the agents of the bank to the plaintiffs, Thomas and James Harwood. The bank, in part payment, took the assignment of a judgment for one thousand dollars, to the January Term, 1818, (Aughenbaugh and Clippinger v. Michael and William Baker,) with a cessel until the 13th of May, 1818.
Five clays after the cesset expired, viz. on the 18th of May, 1818, there is this assignment:—•
“For value received, we assign the above judgment to Fahnestock and Gallagher, and guaranty the payment of the same. ■

“Barnet Aughenbaugh.

“ John Clippinger. ”
There is also this assignment on the record:—
“ For value received, I do hereby assign and transfer to the jPennsylvania Agricultural and Manufacturing Bank, all my interest in the judgment in this case, and the money due thereon, and I also guaranty the payment thereof. Witness my hand, the 11th of December, 1819.
“Thomas Gallagher.”
Thomas Gallagher was one of the firm of Fahnestock and Gallagher, and there is no exception taken to his power to assign the whole interest of the firm in this judgment. It is agreed that the guarantee of Gallagher shall be considered as the act of the plaintiffs in this suit. And that the claim of the bank shall be tried and set off by the defendants, if Gallagher be liable on his guarantee.
There were several judgments docketed in favour of different persons against the Bakers, prior in date to this judgment, assigned by Gallagher to the bank.
Subsequent to the first assignment, on the 23d of May, ISIS, but before the 11th of December, 1819, the time of the second assignment, executions had been issued on the first judgments, the real and personal property sold, and the money made, and in the hands of the sheriff It appears, that after satisfying prior judgments, there was a balance, the amount not yet ascertained, in the hands of the sheriff, applicable to the judgment assigned. The Bakers had absconded secretly—William about the 14th of April, 1818, Michael some time before.
From this statement of facts, it is perfectly obvious that there has been a strange neglect, or want of knowledge of this business, from its very commencement. The property of the Bakers was sold during the time that Fahnestock and Gallagher were the equitable owners of the judgment. Had ordinary diligence been used by them, there would have been no difficulty in securing the residue of the money, after payment of the prior judgments and executions. The amount ascertained, it would have been only necessary for them to have demanded payment from the sheriff, and if payment had been refused, to have ruled and attached him, or *33 brought suit against him, or his sureties, on their bond, in a sum stated in the recognizance. It is not pretended, that at that time the bail of the sheriff was discharged by lapse of time, nor that they were unable to pay any amount of money, for which the sheriff may have been in default. Indeed, I cannot perceive what will prevent the recovery of the money at this time, by a suit on the recognizance against the sheriff. The bail are discharged, but the sheriff is not; and the recognizance was and continues to be a lien on the real estate of the sheriff.
Without taking any steps whatever, or even knowing, so far as we are informed, that the Bakers were insolvent, and had absconded, or that there were any judgments and executions against the Bakers, Gallagher, without the assent of his partner, assigns the judgment, and enters into the guarantee, which is the subject of the present suit. Correctly to understand this case, it is necessary to transport ourselves back to the 11th of December, 1819, and discern if we can, the intention of the parties in the assignment By the assignment, the bank became vested with the interest which Gallagher had in the judgment. They could, under their equitable interest, if they had chosen to do so, have proceeded to investigate the transactions, which had taken place before their interest accrued. They could have ruled the sheriff, or have brought suit against him, as the equitable owners of the judgment, and their rights would have been protected. They might also, in the name of Fahnestock and Gallagher, have maintained suit against Aughenbaugh and Clippenger, on the guarantee. In case of the insolvency of Gallagher, that would have been their only remedy, provided they were forced to resort to the guarantee. The question, however, is not what they might have done, but what they were bound to do. Did the Agricultural Bank suppose, that by the assignment they were bound to look to any other person than Michael and William Baker? Were any other persons in their contemplation, at that time? Was it the intention of the parties, that the bank should proceed against the sheriff, and unravel a transaction of some standing, or that they should commence suit against aiughenbaugh and Clippenger, in the name of Fahnestock and Gallagher? Prima facie it would appear to me, that that was not the understanding of Gallagher and the agents of the bank. In forming this opinion, it is a circumstance of no small weight that the money was made and in the hands of the sheriff, before the interest of the bank commenced, not on an execution issued on this judgment, but the money was collected on executions issued on other judgments, of which the bank, so far as we are informed, had no notice. There was no execution issued on the assigned judgment, and the bank, at the time of the assignment, should have had notice from Gallagher of the existence of the other judgments and executions against the Bakers. They will not be affected with implied notice. The *34 guarantee of Gallagher, in the absence of all other facts, would be an engagement to pay the debt, on the failure of Michael and William Balter to do so. If, then, this were the State of the case', the Balters being insolvent at the time of the assignment, or afterwards becoming so, and the bank not being bound to proceed against the sheriff, nor against Jiughenbaugh and Clippenger, I should be of the opinion that Gallagher was liable on his guarantee.
If, however, both parties were aware, at the time of the assignment, that the property had been sold, and that there was money in the hands of the sheriff, applicable to this judgment, and that the Bakers were insolvent, then I should apprehend, it was their intention that the bank should proceed against the sheriff, before Gallagher was liable to the whole amount on his guarantee. It would be a defence to Gallagher, to the extent of the loss actually sustained.
The counsel for the plaintiffs have contended, that although the bank may not have been bound to have proceeded against the sheriff, yet they ought to have informed them of their determination, that they might have recourse to the guarantee of Jiughenbaugh and Clippenger. That they were prevented from doing this, by the circumstance of the bank having the legal control of the judgment; and that they were solvent at that time, but are now insolvent. If the bank were only bound to look to the defendants in the judgment, and they were insolvent at the time of the assignment, the liability of Gallagher, commenced immediately. He should have taken care of himself, and cannot, I think, reasonably complain of the bank. If they had commenced suit, it would have been against himself. It had become an absolute undertaking, and no notice to him was necessary.
But suppose a suit had been brought against Jiughenbaugh and Clippenger, could either Gallagher or the bank have recovered the whole amount of the judgment? They would have had a defence, most clearly to the extent of the money in the hands of the sheriff, applicable to this judgment. They would have had a right to complain that ordinary diligence had not been used by Fahnestock and Gallagher, in compelling the sheriff to pay over the monej'. They might with great propriety have said, that it was only necessary to have called on the sheriff, and the money would have been paid. And that, if not paid, it was their duty to have ruled the sheriff, or to have brought suit against him.
It may perhaps be important in another trial, to inquire whether any suit.could have been sustained against Jiughenbaugh and Clippenger, until there was some proceeding against the Bakers, and until some steps were taken to ascertain, and collect the money in the hands of the sheriff.
The parties to the assignment of the 23d of May, 1818, intended that something should be done before Jiughenbaugh and Clip *35 penger were liable on their guarantee. At that time, the Bakers were owners of a considerable real and personal property, for it appears that their property was sold, between the 23d of May, 1818, and the 19th of December, 1819, when Fahnestock and Gallagher were the owners of the judgment, who do not appear to have taken any steps whatever to secure the payment of the money. I would not wish to be understood as saying, that a mere delay, although attended with loss, would discharge Augheniaugh and Clippenger. If, however, at the time of the assignment, there had been gross negligence, it would be a discharge of the claim on the guarantee, to the extent of the loss sustained.
In the course of the trial, two bills of exception have been taken to the admission of evidence, each of which had been assigned for error in this court.
The evidence is objected to, in the first bill, on the ground that it is irrelevant. In the trial of a cause, it is sometimes difficult for the court to say whether it be irrelevant or not. It is a matter of some discretion with them, and when the evidence is admitted, I should be unwilling to reverse on that ground alone. If injury has been done, it may be corrected on a motion for a new trial. Although, after the evidence given of -the sale of the lots, I cannot perceive the importance of the testimony, that would not be a sufficient reason, with me, to reverse the judgment.
The next exception, is to the admission of the evidence, which is intended to prove, that in 1819, 1820, and 1821, Aughenbaugh and Clippenger were solvent, and that at the time of the trial they were insolvent.
I cannot say, that this testimony was either irrelevant or incompetent. Its importance, however, will ultimately depend upon the facts proven in the next trial of the cause. And this leads me to consider the only remaining point. I cannot believe that the legislature ever intended to prohibit a transaction such as the one now presented to the court. I decide this cause, under its special circumstances, and would wish to be so understood. The Agrir cultural and Manufacturing Bank were about winding up their affairs, and for this purpose sold their banking house to the plaintiffs, and took in part payment this judgment, with the guarantee of Gallagher. The legislature did intend to prohibit a trading in bonds or judgments, or purchase of pre-existing debts, at a discount,’ a transaction, well understood, as a shaving of paper. This is against the-manifest policy of the act, and a course of dealing of that kind would be attended with great danger to the public. But was this the case in the present instance? Neither of the parties had any intention of shaving this judgment. The bank was desirous of selling, and the plaintiffs of purchasing the banking house, and the assignment in question was a mere mode of payment, agreed upon between the parlies. The bank had merely in view to close the concerns of the company. In this, I can *36 perceive neither a violation of the letter or the spirit of the act of assembly. It would, in my opinion, be most manifestly unjust to permit this defence to avail Gallagher, by which he would be enabled to defraud the bank, to the amount of the value of the judgment.
Judgment reversed, and a venire facias de novo awarded.